## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JOHNNIE LEWIS                                            CIVIL ACTION

VERSUS                                                   21-475-SDD-RLB

EYE CARE SURGERY CENTER, INC.

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendant, Eye Care Surgery Center, Inc. ("Defendant").   Plaintiff, Johnnie Lewis ("Plaintiff"), has filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply.*[3] For the following reasons, the Court finds that Defendant's motion should be granted.

## I.    LOCAL RULES AND EVIDENTIARY OBJECTIONS

### A.  Local Rules – Statements of Fact

Parties are required to comply with the following Local Rules of the Middle District of Louisiana in filing and opposing motions for summary judgment.   Local Rule 56(f) provides:

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. **An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion**. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. **The court shall have no independent duty to search or consider any part of the record not specifically referenced in the**

---

[1] Rec. Doc. 30.
[2] Rec. Doc. 46.
[3] Rec. Doc. 47.

**parties' separate statement of facts**. (emphasis added).

Local Rule 56 (c) requires an opposing party to:

> submit with its opposition a separate, short, and concise statement of material facts. **The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule**. Each such statement shall begin with the designation "Admitted," "Denied," or "Qualified" and, in the case of an admission, shall end with such designation. The opposing statement may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation as required by subsection (f) of this rule. (emphasis added).

Unless otherwise indicated, the Factual Background below is comprised almost entirely of facts admitted or deemed admitted for purposes of this Motion based on Plaintiff's failure to comply with Local Rules 56(c) & (f) of the Middle District of Louisiana. Where Plaintiff failed to cite to record evidence in denying Defendant's statements, submitted legal argument rather than a supported, contradictory factual statement, or cited evidence that does not support Plaintiff's counterstatement, the Defendant's proffered statements of fact are deemed admitted under Rule 56 of the Federal Rules of Civil Procedure and the Local Rules of this Court.

In Plaintiff's Opposing Statement of Material Facts, she admits Defendant's statement Nos. 6, 7, 19, and 20.[4] However, for Defendant's statement Nos. 1, 2, 10, 11, 16, 17, 18, and 22, Plaintiff simply states "disputed" or "denied," without reference to any evidence.  Plaintiff's Opposition brief contains a scant two citations to evidence, both generally citing to Plaintiff's entire Affidavit.[5] The Fifth Circuit has instructed:

---

[4] Rec. Doc. 46-4.
[5] *See id.* at pp. 6, 10.

When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. *See Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins, Inc*., 953 F.2d 909, 916 (5th Cir. 1992), *cert. denied*, 506 U.S. 832, 113 S. Ct. 98, 121 L. Ed. 2d 59 (1992). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas*, 136 F.3d at 458; [*Stults v. Conoco, Inc*., 76 F.3d 651, 657 (5th Cir. 1996)]; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed. 2d 127 (1994); *Skotak*, 953 F.2d at 916 n. 7; *see also Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (it is not necessary "that the entire record in the case ... be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"); *cf. U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs"). Because [Plaintiff] did not identify any evidence of damages in his summary judgment response, the evidence was not properly before the district court and will not be considered here.[6]

Thus, these statements are deemed admitted unless they are otherwise inadmissible based on Plaintiff's evidentiary challenges.

For several remaining statements, Plaintiff responds with "Denied" and a general reference to Plaintiff's entire 47-paragraph Affidavit.  This also fails to comply with the Local Rules and Rule 56 of the Federal Rules of Civil Procedure. A "non-movant must 'identify **specific evidence** in the record, and [ ] articulate the "**precise manner**" in which that evidence support[s] [her] claim.'"[7] In the absence of proof, the Court will not assume the nonmovant could or would prove the necessary facts, and the mere argued existence of a fact dispute will not defeat a properly supported motion.[8]

---

[6] *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

[7] *Watkins v. Experian Info. Sols., Inc*., No. 13-239, 2014 WL 12879669, at *4 (W.D. Tex. Sept. 8, 2014), *report and recommendation adopted*, 2014 WL 12879668 (W.D. Tex. Oct. 3, 2014)(quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994))(emphasis added).

[8] *Badon v. R J R Nabisco, Inc*., 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little*, 37 F.3d at 1075); *Simmons v. Berglin*, 401 F. App'x 903, 905, 908 (5th Cir. 2010) (citing *Anderson*, 477 U.S. at 248); *Boudreaux v. Banctec, Inc*., 366 F. Supp. 2d 425, 430 (E.D. La. 2005) (citations omitted).

## B.  Plaintiff's Affidavit/Purported Evidence

Plaintiff's Affidavit presents evidentiary problems.  First, it does not state that it is based on her personal knowledge, and it is rife with hearsay and speculation lacking underlying factual support.   As this Court has held:

> For testimony from an affidavit to be admissible for summary judgment purposes, the affidavit must: 1) be based on personal knowledge, 2) set out facts that would be admissible in evidence, and 3) show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4).

> Further, it is not enough to merely state that the affidavit is based on personal knowledge, it must be clear that it is also based on facts alleged in the affidavit. *See Bright v. Ashcraft*, 259 F. Supp. 2d 494, 498 (E.D. La. 2003)("A declarant must provide evidence to establish that he has personal knowledge of the facts stated."). Personal knowledge means that the affiant "must have had an opportunity to observe, and must have actually observed the fact." *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 673 (W.D. Tex. 2015). Finally, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence." *Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d 524, 535 (N.D. Tex. 2005).  Any statements that violate the rule[s] may "not [be] considered for summary judgment purposes; any portions of the declarations that are not struck remain part of the summary judgment record." *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 673 (W.D. Tex. 2015).[9]

Plaintiff makes several attestations for which there is no foundation of her personal knowledge for the offered facts.  For example, Plaintiff attests she was passed over for promotions, for which she was qualified, in favor of co-workers "less qualified than [Plaintiff]" or "less trained in skill and effort";[10] she attests that other unidentified employees "were offended and witnessed instances of harassment, retaliation, or discrimination";[11] she attests that another African-American employee "indicated to

---

[9] *Floyd v. Chilly's L.L.C. of Alabama*, No. 15-00544-BAJ-RLB, 2017 WL 1455024 at *3 (M.D. La. Apr. 21, 2017).

[10] Rec. Doc. 46-1, ¶¶ 4-5, 14.

[11] *Id.* at ¶ 9.

[Plaintiff]" that she signed an affidavit in support of Defendant "to keep her job," and this employee "expressed concerns about harassment";[12] she attests that Defendant employed more than 50 employees during her employment period;[13] and she attests she was paid less than men employed by Defendant for "substantially the same responsibility."[14] Plaintiff offers no context for these statements, no underlying foundation to demonstrate how she obtained personal knowledge to make the statements, and she is not competent to attest to what others experienced, witnessed, or stated.

While summary judgment affidavits need not contain any magic language, the affiant's personal knowledge and competence must be reasonably inferred from their positions and the nature of their participation in the matters to which they swore.[15] In *Russell v. Parkview Baptist School, Inc.*,[16] another Section of this Court noted that,

> [T]he Fifth Circuit quoted with approval a Ninth Circuit opinion which "found it proper in the summary judgment context for district courts to rely on affidavits where the affiants' 'personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore.'" *Id*. (quoting *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990)). Thus, in *DIRECTV*, the Fifth Circuit declined to strike an affidavit for lack of personal knowledge because it was within the affiant's position—or his "sphere of responsibility"—to be familiar with the investigation discussed in the affidavit, so his knowledge could be "reasonably inferred." *Id*. (quoting *Hodges v. Exxon Corp*., 563 F. Supp. 667, 669–70 (M.D. La. 1983)).

There is nothing before the Court to demonstrate Plaintiff's competence and/or personal knowledge to testify that Defendant's payroll practices result in disparate pay for men and

---

[12] *Id*. at ¶¶ 29-30.
[13] *Id*. at ¶ 12.
[14] *Id*. at ¶¶ 10, 13.
[15] *In re Green*, 968 F.3d 516, 523-24 (5th Cir. 2020) (citations omitted).
[16] 2021 WL 1147162, *3 (M.D. La. Mar. 25, 2021).

women performing the same jobs. Plaintiff does not describe her job duties in the position of Accounts Payable Manager; thus, the Court cannot infer that access to information such as Defendant's general pay tables, promotion practices, job descriptions/qualifications, or any side-by-side comparison of specific candidates and specific positions is within Plaintiff's "sphere of responsibility."

Third, Plaintiff's Affidavit contains numerous legal conclusions offered as "facts." Conclusory statements without proper support do not meet the requirements of Rule 56(e).[17] Further, the generalized testimony of a party's subjective belief is insufficient to create an issue for trial when the beliefs are not substantiated.[18] While Plaintiff is indeed capable of attesting to her personal experiences and feelings, Plaintiff cannot create genuine issues of material fact based on her feelings and by reciting boilerplate legalese. For example, Plaintiff attests that: (1) she "suffered an adverse employment action" and was "constructively terminated";[19] (2) she "was subjected to a hostile work environment" that was "pervasive" and "affected a term, condition, or privilege of [her] employment";[20] (3) the harassment she experienced was "objectionably and substantially offensive not only to [her], but also to any reasonable person" and was "so severe or pervasive as to alter the conditions of [her] employment";[21] the harassment was "threatening and more

---

[17] *See Goodman v. Life Ins. Co. of North America*, 244 F.3d 138 (5th Cir. 2000)(citing *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331 (5th Cir. 1998); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)("Although we consider the evidence in the light most favorable to the nonmoving party, ... conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment.")(internal citations omitted); and *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)); *see also Miller Exploration Co. v. Energy Drilling Co.*, 130 F.Supp.2d 781, 785 (W.D. La. 2001).
[18] *Bickerstaff v. Whitney Natl. Bank*, No. 96-30231, 1996 WL 595654, at *3 (5th Cir. Sept. 20, 1996); *Roberson v. Alltel Info. Servs*., 373 F.3d 647, 654 (5th Cir. 2004); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152-53 (5th Cir. 1995).
[19] *Id.* at ¶ 16.
[20] *Id.* at ¶¶ 17, 19.
[21] *Id.* at ¶ 21.

than mere offensive utterances";[22] and the harassment was "extreme and outrageous," "beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community."[23]   Plaintiff's recitation of the jurisprudential requirements or elements of her causes of action does not constitute competent summary judgment evidence where such statements are not supported by independent facts based on Plaintiff's personal knowledge and experience.

Accordingly, the Court will consider only properly supported attestations based on Plaintiff's personal knowledge in deciding this motion.

The Court must also note that Plaintiff's Opposition contains an abundance of statements for which absolutely no evidence has been provided to this Court.   It is axiomatic that unsupported arguments and representations of counsel in a brief are not competent summary judgment evidence,[24] and Plaintiff cannot survive summary judgment based on the impassioned statements of counsel and evidence referenced or promised but not presented in opposition to Defendant's summary judgment motion.

Plaintiff contends she has provided "documented experiences" of a pattern of being overlooked for promotions"; "biased negative performance reviews";[25] "answers to interrogatories and affidavits";[26] "accounts" of coworkers who witnessed or suffered harassment;[27] "various pieces of evidence and testimonies that validate [Plaintiff's] experience"; "internal communications, including emails and memos"; "medical and psychological records;" and corroborating "colleague testimonies."[28] Yet, none of this

---

[22] *Id.* at ¶ 22.
[23] *Id.* at ¶¶ 41, 43.
[24] *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).
[25] Rec. Doc. 46, p. 1.
[26] *Id.* at p. 4.
[27] *Id.* at p. 8.
[28] *Id.* at p. 9-10

purported evidence has been submitted to the Court.  Plaintiff ostensibly acknowledges this deficiency, imploring the Court to "recognize[] the gravity of these allegations and permit[] Ms. Lewis the opportunity to present her case in its entirety."[29] Plaintiff maintains that her allegations, "if substantiated through the legal process, have the potential to uncover discriminatory practices that are in direct violation of both federal and state laws, thereby necessitating a thorough and fair evaluation of the facts at hand."[30]  These arguments show that Plaintiff misapprehends her burden under Rule 56 as the opposing party, an error further demonstrated by her reliance on the Rule 12(b)(6) pleading standard in her Opposition.[31]  Plaintiff was required to submit this evidence in opposing Defendant's motion; Plaintiff cannot survive summary judgment on the promise of substantial evidence that might later be submitted at trial.

### C.  Plaintiff's Hearsay and Evidentiary Objections

Plaintiff objects generally to Defendant's Statement of Uncontested Material Facts Nos. 10, 11, and 12 as hearsay.  Plaintiff lodges the following objection to Defendant's Statement of Uncontested Material Facts Nos. 16, 17, 18, 21, and 22: "'Under Federal Rule of Civil Procedure 56(c)(2), a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).' Musket Corp. v. Suncor Energy (U.S.A.) Mktg., Inc., CIVIL ACTION H-15-100, at *2 (S.D. Tex. Nov. 15, 2016)."[32]  Plaintiff's Opposition is devoid of any argument in support of these evidentiary objections.

---

[29] *Id.* at p. 7.
[30] *Id.*
[31] *Id.* at p. 6.
[32] Rec. Doc. 46-4.

Plaintiff claims that the following attestations made by Defendant's Human Resources Payroll Manager Racheal Hayward-Cash ("Hayward-Cash") are hearsay: (1) the standard annual pay increase for staff at Eye Care Surgeons is 3%;[33] (2) annual pay increases above 3% are typically reserved for those situations when an employee changes job position or receives a promotion;[34] and (3) Plaintiff received annual pay increases exceeding the standard 3% annual pay increase for staff in both 2019 and 2020 despite neither changing her job position nor receiving a promotion.[35] There is no basis for Plaintiff's hearsay objections, and she does not argue any.

Hayward-Cash provided a sworn Declaration wherein she attests that the facts provided were based on her personal knowledge as Defendant's current Human Resources Payroll Manager, a position that she has held for nearly thirty years.[36] She further attests that, in this role, she is "familiar with the business and operations of Eye Care Surgeons including the Human Resources department and the Payroll department functions."[37] The Fifth Circuit has held that an official title alone is sufficient to indicate a basis of personal knowledge when that title clearly identifies the official's sphere of responsibility and the facts stated in the affidavit are within that sphere.[38] The facts denounced by Plaintiff as hearsay easily fall within the sphere of responsibility in Hayward-Cash's role in Defendant's company.  Plaintiff's hearsay objections to Defendant's Statement of Uncontested Material Facts Nos. 10, 11, and 12 are DENIED.

---

[33] *Id.* at ¶ 14.
[34] *Id.* at ¶ 15.
[35] *Id.* at ¶ 16.
[36] *Id.* at ¶¶ 1-2.
[37] *Id.* at ¶ 3.
[38] *Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Rutledge v. Liab. Ins. Indus.*, 487 F.Supp. 5, 7 (W.D. La. 1979)).

As to Plaintiff's claim that Defendant's Statement of Uncontested Material Facts Nos. 16, 17, 18, 21, and 22 "cannot be presented in a form that would be admissible in evidence," the Court denies these objections.  Although Plaintiff has provided no basis for her challenge to these attestations made by Hayward-Cash and her former co-worker Destinee Porche ("Porche"), the Court assumes that the objection is based on hearsay. The attestations made by Porche are based on her own personal knowledge, recounting a conversation of which she was a participant, and explaining her understanding of a reference to a popular song.[39]  Plaintiff has not shown that Porche is incompetent to make these statements; alternatively, Plaintiff has not shown that this evidence could not be reduced to admissible evidence at trial.  The same is true for the information provided by Hayward-Cash regarding the company's investigation of a racially motivated incident. Whether statements made by a declarant are hearsay is not relevant in the summary judgment context because at this stage, "materials cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.'"[40] Plaintiff's admissibility objections are denied.

## II.    FACTUAL BACKGROUND

Defendant is a physician-owned eye care and surgery center that has served Baton Rouge and the surrounding area for over thirty years. Dr. Scott Nelson, M.D. ("Dr. Nelson") is an ophthalmologist who works for and owns the company.[41] Defendant provides comprehensive eye care and vision services, including but not limited to, comprehensive eye exams, vision correction services through glasses and contact

---

[39] *See* Rec. Doc. 30-9, ¶ 7.
[40] *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)).
[41] Rec. Doc. 30-6, Declaration of Scott Nelson, M.D. ("Nelson Decl."), ¶ 3.

lenses, LASIK surgery, cataract surgery and the most current surgical techniques available.[42]  Until recently, Defendant employed less than fifty people.[43]

All employees, including Plaintiff, receive and review a copy of the employee handbook and must provide a signed acknowledgment stating that they have completed a review of the handbook and have a familiarity and understanding of its policies.[44] Plaintiff acknowledged in writing that she received and reviewed the employee handbooks provided to her in 2018 and 2019.[45]

Plaintiff began working for Defendant in July 2017 through a temporary account staffing agency.[46]  Thereafter, Plaintiff applied for and was hired to a full-time position in Defendant's Accounts Payable department on January 1, 2018, at a pay rate of $20.00/hour.[47]  Plaintiff received a favorable annual review on January 28, 2019, resulting in a base pay increase to $22.00/hour retroactive to January 13, 2019.[48]  Plaintiff received a favorable annual review on March 9, 2020, resulting in a base pay increase to $23.00/hour retroactive to February 23, 2020.[49]

---

[42] Rec. Doc. 30-3, Declaration of Racheal Hayward-Cash ("Hayward-Cash Decl."), ¶ 5.  Plaintiff disputes this fact but cites no evidence to refute it.

[43] *Id.* at ¶ 6.  Plaintiff disputes this fact but cites no evidence to refute it. Plaintiff attests that while she was employed by Defendant, it employed more than fifty people, Rec. Doc. 46-1, ¶ 12, but she offers no foundation for her knowledge of this fact.

[44] *Id.* at ¶ 8; Rec. Doc. 30-4, Tiger Vison LLC Eye Care Surgery Center Employee Handbook (Rev. 1/1/2020).  Plaintiff attests that this handbook is not the same handbook she received and signed when she began her employment with Defendant.  Rec. Doc. 46-1, ¶ 45.  Indeed, the handbook reflects that it was revised on January 1, 2020, and Plaintiff's Acknowledgments of Receipt of Defendant's handbook were signed on January 12, 2018 and February 19, 2019. *See* Rec. Doc. 30-5.  Nevertheless, Plaintiff fails to offer a copy of the handbook(s) she received, identify any distinctions between the handbooks, or argue why any distinctions are relevant to her claims.

[45] Rec. Doc. 30-5.

[46] Hayward-Cash Decl., ¶ 10.

[47] *Id.* at ¶ 11.

[48] *Id.* at ¶ 12.  Plaintiff denies this fact and cites generally to her entire Affidavit; however, nothing in Plaintiff's affidavit disputes this fact.

[49] *Id.* at ¶ 13. Plaintiff denies this fact and cites generally to her entire Affidavit; however, nothing in Plaintiff's affidavit disputes this fact.

The standard annual pay increase for staff at Eye Care Surgeons is 3%,[50] and annual pay increases above 3% are typically reserved for those situations when an employee changes job position or receives a promotion.[51] Plaintiff received annual pay increases exceeding the standard 3% annual pay increase for staff in both 2019 and 2020 despite neither changing her job position nor receiving a promotion.[52] Plaintiff's favorable annual reviews in 2019 and 2020 were conducted by Robert Johnson, and he approved the accompanying above-average pay increases.[53]

Plaintiff claims she was subjected to race and sex discrimination and a racially hostile work environment during her employment with Defendant.[54] Specifically, Plaintiff attests that she "experience[ed]" a comment from a White co-worker that the co-worker's daughter went to school and told her teacher she was a "real n***** rockstar."[55] Defendant's employee Destinee Porche, an African-American female working in the Insurance Precertification Department since October 1, 2015,[56] witnessed and participated in the conversation wherein this comment was made.[57]

Porche attests that she shares an office at Eye Care Surgeons with Aryel Herrington and Lashonda Cash, and their conversations frequently concern their children's activities.[58] Porche attests she did not hear Aryel Herrington use the actual

---

[50] *Id.* at ¶ 14. Plaintiff disputes this fact but cites no evidence to refute it.

[51] *Id.* at ¶ 15. Plaintiff disputes this fact but cites no evidence to refute it.

[52] *Id.* at ¶ 16. Plaintiff denies this fact and cites generally to her entire Affidavit; however, nothing in Plaintiff's affidavit disputes this fact.

[53] *Id.* at ¶¶ 17, 18. Plaintiff denies this fact and cites generally to her entire Affidavit; however, nothing in Plaintiff's affidavit disputes this fact.

[54] Rec. Doc. 46-1, ¶¶ 15, 17.

[55] *Id.* at ¶ 18(b).

[56] Rec. Doc. 30-11, Affidavit of Destinee Porche ("Porche Affidavit"), ¶¶ 3, 5. Plaintiff inexplicably denies this statement; however, nothing in Plaintiff's affidavit disputes this fact.

[57] *Id.* at ¶ 6. Plaintiff responds that this statement is "disputed in part," but she fails to identify what portion of the statement is disputed and to cite to any evidence. *See* Rec. Doc. 46-4, p. 3.

[58] *Id.* at ¶ 7. Plaintiff denies this fact; however, nothing in Plaintiff's affidavit disputes this fact.

racially derogatory term when recounting her toddler-age daughter's comments.[59] Further, Porche attests she was not offended by this story.[60]

Plaintiff also describes as racial harassment an incident when she discovered a chair upon which the words "KKK N*****" were written in the break room next to her office.[61]  Hayward-Cash attests that this chair, with the inscription "KKK" carved into its arm, was discovered and reported by an employee other than Plaintiff on July 6, 2020.[62] The break room at Eye Care Surgeons is accessible to all employees and their children and to numerous non-employee service contractors.[63] Defendant immediately removed the chair from the break room, contacted legal counsel, contracted for cultural sensitivity, bullying, and harassment training, and followed up with the reporting employee.[64] However, an investigation into the source of the inscription failed to yield actionable information.[65]

Hayward-Cash attests that, during Plaintiff's employment, Plaintiff discussed employment-related concerns with her but never made a "single race-based allegation of mistreatment or discrimination to me [Hayward-Cash] during her employment, nor did she claim that she was experiencing a hostile work environment."[66]  Likewise, Dr. Newton

---

[59] *Id.* Plaintiff responds that this statement is "disputed in part," but she fails to identify what portion of the statement is disputed and to cite to any evidence. *See* Rec. Doc. 46-4, p. 3.

[60] *Id.* at ¶ 8.

[61] Rec. Doc. 46-1, ¶ 18(c).

[62] Hayward-Cash Decl., ¶¶ 19, 20.  Plaintiff denies this fact but cites no evidence to refute it.

[63] *Id.* at ¶ 23. Plaintiff denies this fact and cites generally to her entire Affidavit; however, nothing in Plaintiff's Affidavit disputes this fact.

[64] *Id.* at ¶ 21. Plaintiff denies this fact but cites no evidence to refute it.

[65] *Id.* at ¶ 22.  Plaintiff denies this fact and cites generally to her entire Affidavit; however, nothing in Plaintiff's Affidavit specifically disputes this fact.  Plaintiff does attest that her reports of racial harassment "went unanswered" and that management "failed to do anything about" her complaints, Rec. Doc. 46-1 at ¶¶ 33, 36, but nothing in her Affidavit specifically refutes the offered fact – that an investigation into the chair incident was conducted but unfruitful.

[66] *Id.* at ¶¶ 24, 25. Plaintiff denies this fact and cites generally to her entire Affidavit; however, nothing in Plaintiff's Affidavit specifically disputes this fact.  Plaintiff attests that she reported these claims to Dr. Scott

attests that Plaintiff often met with him to discuss "perceived issues in office operations," most of which were about the "management style of Robert Johnson;" however, Plaintiff "never made a racial allegation or allegation of a hostile work environment in any conversation with me."[67]   Plaintiff counters Dr. Nelson's testimony and attests that she did report allegations of race discrimination and harassment to Dr. Nelson.[68]

Dr. Nelson recounts that he always enjoyed talking to Plaintiff, and he believed that her employment concerns were always resolved after they discussed them.[69] Further, Defendant states that Plaintiff was the only employee trusted to work from home during the early stages of the COVID pandemic.[70]

Plaintiff also claims she was not given the opportunity to apply for promotions with Defendant and that a less qualified, White employee was promoted over her.[71]  Defendant maintains that Plaintiff was neither prohibited nor dissuaded from applying for either the Billing Manager or Precertification Specialist Supervisor positions at Eye Care Surgeons.[72]   However, Defendant explains that these positions require medical billing coding experience and proficiency in the use of Current Procedural Terminology (CPT) and Internal Classification of Diseases-10 (ICD-10), qualifications Plaintiff lacked.[73]

---

Nelson, owner of Eye Care Surgeons, and to "upper management;" Rec. Doc. 46-1 at ¶¶ 33, 36however, she does not attest that she reported her discrimination claims directly to Hayward-Cash.
[67] Rec. Doc. 30-6, Affidavit of Scott Nelson, M.D. ("Nelson Affidavit"), ¶¶ 5, 7.
[68] Plaintiff's Affidavit at ¶¶ 7, 20, 26, 27, 37.  Plaintiff attached as an exhibit to her Opposition a purported email sent to Dr. Nelson detailing general office complaints and personal/racial issues with the company. Rec. Doc. 46-3. First, Plaintiff never cites the Court to this exhibit.  Second, the details found in the exhibit do not change the Court's reasoning and analysis in this Ruling.
[69] Nelson Affidavit, ¶ 6.
[70] Hayward-Cash Decl., ¶ 31. Plaintiff denies this fact and cites generally to her entire Affidavit; however, nothing in Plaintiff's Affidavit specifically disputes this fact.
[71] Plaintiff's Affidavit at ¶¶ 4, 5.
[72] Hayward-Cash Decl., ¶¶ 26, 27. Plaintiff denies this fact and cites generally to her entire Affidavit; however, nothing in Plaintiff's Affidavit specifically disputes this fact.
[73] Id. at ¶¶ 28-30. Plaintiff denies these facts and cites generally to her entire Affidavit; however, nothing in Plaintiff's Affidavit specifically disputes this fact.

According to Defendant, Plaintiff voluntarily resigned on July 24, 2020;[74] Plaintiff maintains she was forced to quit because her working conditions were so intolerable.[75] Plaintiff filed a Charge of Discrimination with the EEOC[76] and received a Right to Sue Letter.[77]  Plaintiff filed this lawsuit on August 17, 2021, asserting the following claims against Defendant: (1) Title VII race discrimination; (2) Title VII hostile work environment; (3) constructive discharge; (4) violation of the Equal Pay Act; (5) intentional and/or negligent infliction of emotional distress under Louisiana state law; and (6) negligent hiring, training and retention under Louisiana state law.  Defendant moves for summary judgment on all claims.

## III.    LAW & ANALYSIS

### A.    Summary Judgment

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[78] This determination is made "in the light most favorable to the opposing party."[79] A party moving for summary judgment "'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[80] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the

---

[74] *Id.* at ¶ 32.
[75] Plaintiff's Affidavit at ¶¶ 16, 24, 34, 38, 40,
[76] Rec. Doc. 30-12.
[77] Rec. Doc. 30-8.
[78] Fed. R. Civ. P. 56(a).
[79] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. Moore, Federal Practice 56.15(3) (2d ed. 1966)).
[80] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

existence of a genuine issue concerning every essential component of its case.'"[81] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[82]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[83] All reasonable factual inferences are drawn in favor of the nonmoving party.[84] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[85] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiffs [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"[86]

In the present case, Plaintiff argues that "it is pivotal to underscore the fundamental legal principle that the defendants bear the burden of proof."[87]  In Title VII discrimination cases, while the Defendant must demonstrate the absence of a genuine issue of material fact, "[i]n response to a motion for summary judgment, it is therefore incumbent upon the non-moving party to present evidence – not just conjecture and speculation – that the

---

[81] *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[82] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).
[83] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[84] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[85] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[86] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[87] Rec. Doc. 46, p. 4.

defendant discriminated against the plaintiff on the basis of the protected characteristic in question."[88]  Additionally, citing to no supporting authority, Plaintiff baldly claims that Defendant cannot carry its summary judgment burden because it failed to depose the Plaintiff.[89]  However, there is no requirement that a movant depose the opposing party to succeed under Rule 56, and it is well settled that sworn testimony in the form of an affidavit or declaration is competent summary judgment evidence.

### B.    Title VII Hostile Work Environment

A race-based or sex-based harassment/hostile-work environment claim requires that Plaintiff establish a prima facie case that (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based upon her race and/or sex; (4) the harassment affected a term or condition of her employment; and (4) Defendant knew or should have known about the harassment and failed to take prompt remedial action.[90]  For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment."[91] To meet this standard, the conduct complained of must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[92]

---

[88] *Hardison v. Skinner*, 489 F.Supp.3d 536, 543 (W.D. La. 2020)(citing *Grimes v. Texas Dept. Of Mental Health and Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996)).
[89] Rec. Doc. 46, p. 4.
[90] *West v. City of Houston*, 960 F.3d 736, 741 (5th Cir. 2020) (per curiam) (citation omitted).
[91] *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir.2005) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).
[92] *Aryain v. Wal–Mart Stores of Tex. LP*, 534 F.3d 473, 479 (5th Cir.2008); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

"Critically, Title VII is not a 'general civility code.'"[93]   Under federal law, the mere utterance of ethnic or racial epithets that engender offensive feelings in an employee, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms, conditions, and privileges of employment.[94] The Court looks to the totality of the circumstances, considering "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance."[95] Generally, poor performance evaluations, "write-ups," and work criticism, even if unjust and unfair and in front of peers, do not rise to the level of a hostile work environment.[96]

Plaintiff attests that she was subjected to a racially and sexually hostile work environment based on the following:

a. Being subjected to a stricter level of scrutiny than my similarly situated white coworkers;
b. Experiencing racially charged statements made by other employees in addition to the managers and owners of Eye Care Surgery Center, including comments that "blacks should go back to Africa" and a comment from a white coworker that her daughter went to school and told her teacher she was a "real nigger rockstar;"
c. Finding a chair with "KKK NIGGER" written upon it in the break room next to my office;

---

[93] *Heath v. Southern University System Foundation*, 2017 WL 2972909 at *5 (quoting *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)) (explaining that the elements of a hostile work environment claim "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"); *Clark v. S. Broward Hosp. Dist.*, 601 Fed.Appx. 886, 900 (11th Cir. 2015) (quoting *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006)) ("Title VII is not a 'general civility code' and does not make 'ordinary [workplace] tribulations' actionable, so not all objectionable language and conduct will support a Title VII harassment claim.") (alteration in original ); *Reine v. Honeywell Int'l Inc.*, 362 Fed.Appx. 395, 397–98 (5th Cir. 2010) ("This high standard for judging hostility is specifically intended to prevent Title VII from becoming a 'general civility code' for the workplace.")).
[94] *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007).
[95] *Rodrigue v. PTS Management Group, LLC*, 550 F.Supp.3d 376, 397 (W.D. La. 2021)(quoting *West v. City of Houston, Texas*, 960 F.3d 736, 742 (5th Cir. 2020); *Harvill*, 433 F.3d at 435).
[96] *See Kang v. Bd. of Supervisors*, 75 Fed.Appx. 974, 975–76, 977 (5th Cir.2003).

d. Discovering that KKK had been written on my printer's toner;
e. Enduring racially and sexually explicit jokes by my direct supervisor Robert Johnson.[97]

Defendant contends Plaintiff has failed to offer summary judgment evidence to substantiate several of these claims, and in any event, taken as true, Plaintiff's allegations do not rise to the level of severity or pervasiveness required to establish a Title VII hostile work environment claim.

Considering all evidence presented in the light most favorable to the Plaintiff, the Court finds that Plaintiff has failed to establish a prima facie case of hostile work environment based on race or sex because she has failed to present competent summary judgment evidence to substantiate her claims, and she has similarly failed to demonstrate that the alleged conduct was so severe or pervasive that it affected a term, condition, or privilege of her employment.

Plaintiff attests she was subjected to a stricter level of scrutiny than her similarly situated white coworkers;[98] however, she does not identify these white co-workers or present evidence to establish that they are similarly situated under the law. She likewise fails to articulate specifically how she was treated differently than others.

Plaintiff attests she "experienced" racially charged statements by other employees and the managers and owners of Eye Care Surgery Center, including comments that "blacks should go back to Africa" and a comment by a White coworker that her daughter told her schoolteacher that she was a "real [n*****] rockstar." With the exception of the two specified statements, Plaintiff's attestation is broad and vague. Plaintiff fails to

---

[97] Rec. Doc. 46-1, Plaintiff's Affidavit, ¶ 18.
[98] The Court will address the law regarding similarly situated comparators more thoroughly when it considers Plaintiff's Title VII race/sex discrimination claim.

specifically identify each purported harasser, and she fails to set forth the specific nature of the other comments, the frequency of the comments, and whether these comments were directed at, or witnessed by, Plaintiff herself.   There is no evidence before the Court to suggest that these comments were more than offhand utterances or that they were personally threatening or humiliating to Plaintiff.

Regarding the "rockstar" comment, Defendant has presented competent summary judgment evidence that Plaintiff was not a direct participant in this conversation.[99]  As discussed above, Porche explained that the conversation was friendly, the "n" word was not actually stated by the White co-worker, and the three participants in the conversation laughed about the story.  Porche attested she thought the story was funny and was not offended by it.  Plaintiff "disputes" Porche's attestations in her Affidavit, but Plaintiff is not competent to testify as to Porche's state of mind or what Porche did or did not directly witness, feel, or experience.   While Plaintiff was clearly subjectively offended, the summary judgment evidence belies Plaintiff's argument that such a comment is objectively offensive. A plaintiff's subjective beliefs are not sufficient to create an issue of fact.[100]

Defendant presented competent summary judgment evidence that the break room chair was discovered and reported by another employee and not the Plaintiff; that the chair was immediately removed and the incident was investigated; that the investigation yielded no actionable information; and that access to the break room extended beyond employees to family members and outside contractors such that Defendant could not be

---

[99] Even if Plaintiff was directly involved in this conversation, such a comment does not rise to the level of threatening or humiliating as a matter of law.
[100] *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995).

certain that the inscription was made by an employee.[101]  Plaintiff "denied" these facts but failed to direct the Court to any countervailing evidence to demonstrate a genuine dispute of these facts.  Where Plaintiff generally cited her Affidavit, Plaintiff did not attest that she reported the chair incident, and she provided no substantiated information whatsoever regarding Defendant's investigation into the incident or who had access to the break room. Simply attesting "I dispute this statement" does not create a genuine issue of material fact that survives summary judgment.

Finally, Plaintiff attests that she was subjected to racially and sexually explicit jokes by her direct supervisor Robert Johnson.  Again, Plaintiff does not describe these jokes or provide the Court with any context or rate of frequency to determine whether this conduct would rise to the level of severe or pervasive such that it affected a term, condition, or privilege of employment.   Vague allegations do not constitute specific evidence required to overcome summary judgment.

Plaintiff attests that this workplace harassment affected her "psychological wellbeing, so much so that [she] had to get a mental health counselor."[102]  However, as noted by other courts within the Fifth Circuit, that a plaintiff "felt compelled to take leave and consult a doctor due to work-related stress … is not evidence of the objective offensiveness of the work environment."[103]

Not only is there a dearth of evidence to support Plaintiff's hostile work environment claim, Plaintiff fails to offer any jurisprudence that would support her

---

[101] Hayward-Cash Decl., ¶ 20.
[102] Rec. Doc. 46-1, ¶ 23.
[103] *Lister v. National Oilwell Varco, L.P.*, 2013 WL 5515196, *28 (citing *Wilkinson v. Potter*, 236 F. App'x 892, 893 (5th Cir.2007) ("The harassment must also be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." (internal quotation marks and citation omitted)).

arguments on this claim, likely because a wealth of jurisprudence undermines Plaintiff's argument.  As cited by the Eastern District of Louisiana in *Hardy v. Federal Express Corp*., numerous courts have examined similar conduct as alleged here and found it insufficient to establish a hostile work environment:

> [I]n *Vaughn v. Pool Offshore Co*., 683 F.2d 922 (5th Cir. 1982), the Fifth Circuit did not find a hostile work environment where plaintiff was directly called racial epithets by coworkers. Similarly, in *Grant v. UOP, Inc*., 972 F. Supp. 1042 (W.D. La. 1996), *aff'd*, 122 F.3d 1066 (5th Cir. 1997), the court held that five separate utterances of the word 'nigger' directly to the plaintiff were insufficient to establish a hostile work environment claim.  *See also, Smith v. Beverly Health and Rehabilitation Serv., Inc*., 978 F. Supp. 1116 (N.D. Ga. 1997) (holding that a several utterances of racial epithets by a supervisor were insufficient to support hostile work environment claim); *McCray v. DPC Indus., Inc*., 942 F. Supp. 288 (E.D. Tex. 1996) (holding that five uses of the terms "black Yankee" and "son," two racial jokes, and the use of the word "nigger" were insufficient to establish a hostile work environment claim).[104]

Similarly, in *Johnson v. TCB Constr. Co*., the Fifth Circuit found there was insufficient evidence to establish a racially hostile work environment where a supervisor's comment that the plaintiff was just "like a damn n****r" was isolated; there was no evidence of the objective effect of that comment on the plaintiffs work performance; and although there was evidence that the supervisor frequently used the term "n****r," those other comments were not uttered in the plaintiffs presence, and there was no evidence that they affected the plaintiff's job.[105]

Plaintiff attests that "all of the other African American employees" of Defendant "were offended and witnessed instances of harassment, retaliation, or discrimination" during Plaintiff's employment.[106]  The Fifth Circuit, however, has foreclosed this type of

---

[104] No. 97-1620, 1998 WL 419716 at * 9 (E.D. La. July 21, 1998).
[105] 334 Fed. Appx. 666, 671 (5th Cir. 2009).
[106] Rec. Doc. 46-1, ¶ 9.

evidence as competent summary judgment evidence.   In *Celestine v. Petroloeos de Venezuela SA.*,[107] the plaintiff relied upon the racial harassment claims heard by others to support his hostile work environment claim.[108]   The Fifth Circuit classified the racial harassment heard by other employees as "hearsay; things that other employees told him[.]"[109]  The Fifth Circuit upheld the district court's dismissal of the plaintiff's hostile work environment claims in *Celestine* because, as the "[plaintiff] established *no* act adverse *to him* [], he could not establish a hostile work environment claim."[110]  Applying the standard articulated in *Celestine*, it is clear that, to the extent Plaintiff relies on the on the allegedly racist comments experienced by other African American employees, such reliance fails to meet her hostile work environment prima facie burden.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

### C.  Title VII Race Discrimination – Constructive Discharge

To prove race discrimination under Title VII, a plaintiff must establish that she is (1) "a member of a protected class" (2) "was qualified for the position" (3) "was subjected to an adverse employment action"; and (4) "other similarly situated persons were treated more favorably."[111]   If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse actions taken. [112]  If the defendant satisfies this burden of production, the burden shifts back to the plaintiff, who must "offer sufficient evidence to create a genuine issue

---

[107] 108 Fed. Appx. 180 (5th Cir. 2004).
[108] *Id.* at 187-88.
[109] *Id.* at 187.
[110] *Id.* at 188.
[111] *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005).
[112] *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)

of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).'"[113]  Prongs one and two are clearly satisfied here; however, Plaintiff fails to demonstrate a genuine dispute of fact as to whether she suffered an adverse employment action, and she fails to identify a similarly situated comparator treated more favorably under nearly identical circumstances.

1.  <u>Adverse Employment Action – Constructive Discharge</u>

An adverse employment action is one that affects a "term, condition, or privilege of employment."[114] Until recently, Fifth Circuit precedent limited the scope of adverse employment actions to "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."[115] In *Hamilton v. Dallas County*, the Fifth Circuit, sitting *en banc*, rejected its "ultimate-employment-decision test" in favor of a less restrictive standard.[116] Under the *Hamilton* standard, "a Title VII plaintiff may recover damages even for 'discrimination in the terms, conditions, or privileges of employment' that 'did not involve a discharge,' 'loss of pay,' or other 'concrete effect on [his or her] employment status.'"[117]

Under this framework, the Fifth Circuit has clarified that to satisfy the "adverse employment action" requirement, "a plaintiff need only allege facts plausibly showing

---

[113] *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (citing same in the context of a Title VII race discrimination case).
[114]  *Hamilton v. Dallas Cnty.*, No. 21-10133, 2023 WL 5316716, at *56 (5th Cir. Aug. 18, 2023)(en banc)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 77 (1984) (internal quotation marks omitted)).
[115] *Id.* at *3 (quoting *Welsh v. Fort Bend Ind. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) (internal quotation marks omitted)).
[116] *Id.* at *4.
[117] *Id.* (alteration in original) (quoting *Landgraf v. USI Film Prod.*, 511 U.S. 244, 254 (1994)).

discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment."[118] Although the criteria for an adverse employment action are broad, the Fifth Circuit stated that Title VII "does not permit liability for de minimis workplace trifles."[119]

Plaintiff argues that she has demonstrated an adverse employment action because she was constructively discharged when her working conditions became so intolerable, she was compelled to resign. The Court notes that, despite Plaintiff pleading constructive discharge as a separate cause of action, "under federal law, the constructive discharge doctrine is an alternative way of proving an adverse employment action in Title VII and other cases, but constructive discharge is not itself a cause of action. It is a means of proving the element of an adverse employment action where the employee quits instead of being fired."[120]

Title VII proscribes an employer from discharging an employee "because of" his or her "race, color, religion, sex, or national origin."[121] "In determining whether an employer's actions constitute a constructive discharge," courts consider "whether 'working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'"[122] An employee may be constructively discharged in several ways, including by:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's

---

[118] *Id*. at *6 (quoting 42 U.S.C. § 2000e-2(a)(1)) (citing *Hishon*, 467 U.S. at 77)).

[119] *Id*. at *7 (citations omitted).

[120] *Wells v. City of Alexandria*, No. 03-30750, 2004 WL 909735, at *3 (5th Cir. Apr. 29, 2004) (unpubl.).

[121] 42 U.S.C. § 2000e-2(a)(1).

[122] *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 480 (5th Cir. 2008) (alterations omitted) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004)).

resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.[123]

Further, a constructive discharge claim "requires a greater degree of harassment than that required by a hostile environment claim."[124] Discrimination or "[m]ere harassment, alone, is insufficient; rather, the plaintiff must show 'aggravating factors' to justify departure."[125]

Plaintiff has only offered evidence regarding alleged harassment. The Court held above that Plaintiff has failed to demonstrate a hostile work environment; therefore, her claim that she was constructively discharged likewise fails as it carries an even higher evidentiary burden. Because Plaintiff has not shown that she suffered an adverse employment action, she has failed to carry her summary judgment burden on the race/sex discrimination claim.

### 2. Similarly Situated Comparators

Plaintiff has also failed to identify a similarly situated comparator to satisfy the fourth prong of a prima facie case of discrimination. The law is clear that, "[i]n the context of a race discrimination claim, where the plaintiff alleges that employees who were not members of the protected class received more [favorable treatment], the plaintiff must come forward with **specific evidence** of comparators who were similarly situated."[126] Courts within the Fifth Circuit define "similarly situated" narrowly.[127] In evaluating whether

---

[123] *Aryain*, 534 F.3d at 481.

[124] *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).

[125] *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 331 (5th Cir. 2004); *see also Brown*, 237 F.3d at 566 ("Discrimination, alone, without aggravating factors, is insufficient for a claim of constructive discharge.").

[126] *Corley v. Louisiana ex rel. Div. of Admin., Office of Risk Mgmt*, 816 F.Supp.2d 297, 316 (M.D. La. 2011)(citing *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009))(emphasis added).

[127] *See Horton v. G4S Secure Solutions (USA), Inc.*, No. 16-544-SDD-EWD, 2018 WL 1997535 at *5 (M.D. La Apr. 27, 2018)(citing

an alleged comparator is similarly situated,

> "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor [,] or had their employment status determined by the same person[.]"[128] "Employees with different supervisors, who work for different divisions of a company ... generally will not be deemed similarly situated." The Fifth Circuit has further explained, that "employees who have different work responsibilities ... are not similarly situated."[129]

Plaintiff's vague reference to "similarly situated white coworkers"[130] cannot satisfy the necessary showing.  Defendant is entitled to summary judgment on Plaintiff's Title VII race/sex discrimination claim.

### D.    Title VII Race Discrimination – Failure to Promote

Plaintiff also appears to make a Title VII race/sex discrimination claim of failure to promote.  "To make a prima facie case of race or gender discrimination in the failure to promote context, Plaintiff must show: '(1) that [she] is a member of the protected class; (2) that [she] sought and was qualified for the position; (3) that [she] was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications.'"[131]   Under controlling Fifth Circuit jurisprudence, Plaintiff must show "that the application for the promotion was deterred by a known and consistently enforced policy of discrimination."[132] Plaintiff fails to submit summary judgment evidence for prongs two, three, and four.

---

*Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F.Supp.2d 581, 593 (S.D. Tex. 2012); *see also Lopez v. Kempthorne,* 684 F. Supp. 2d 827, 856-57 (S.D. Tex. 2010)).

[128] *Id.* (quoting *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012)(quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009))).

[129] *Id.* (quoting *Lee*, 574 F.3d at 259 (citing *Wyvill v. United Cos. Life Ins.*, 212 F.3d 296, 302 (5th Cir. 2000)).

[130] Rec. Doc. 46-1, ¶ 18(a).

[131] *Smith v. Home Depot U.S.A., Inc.*, 102 F.Supp.3d 867, 876 (E.D. La. 2015)(quoting *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir.2004)).

[132] *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999).

Defendant contends Plaintiff cannot make a prima facie case for failure to promote because she never applied for any open positions,[133] and she has not presented any evidence whatsoever that she was deterred from applying for a position by a "known and consistently enforced policy."  Defendant has also presented unrefuted evidence that Plaintiff lacked the skills necessary for the Billing Manager position she desired.  Plaintiff ostensibly attempts to dispute this fact by offering her resumé; however, Plaintiff's resumé does not show that she has medical billing coding experience and is proficient in the use of (CPT) and (ICD-10), skills required for the position.[134]

Notwithstanding these failures, Plaintiff has likewise failed to demonstrate that Defendant promoted applicants with Plaintiff's qualifications.  Plaintiff attests that a White co-worker, Amanda Dukes ("Dukes"), was given a Billing Manager position although Dukes was less qualified than Plaintiff.[135]  Plaintiff offers her own subjective belief that Dukes was less qualified, but Plaintiff submits no evidence for the Court to compare and contrast the qualifications of Dukes and Plaintiff.  The only other employee identified in this regard is Marcus Montgomery ("Montgomery"),[136] who Plaintiff describes as a "white male, who is not of a protected class," that "was given a position in the Nursing Department over all of the women who had been there for years."[137] But again, Plaintiff fails to identify the actual position involved, whether she applied for this position, whether she was qualified for this position, or any qualifications for the job that she held but Montgomery was lacking.  Indeed, from the context of the statement, it is unclear if Plaintiff

---

[133] Hayward-Cash Decl., ¶¶ 26-27.
[134] *Id.* at ¶¶ 28-30. Although Plaintiff never directly cites her resumé, it is attached as an exhibit to her Opposition, Rec. Doc. 46-2, and the Court reviewed it in deciding this motion.
[135] Rec. Doc. 46-1, ¶ 4.
[136] Defendant contends Montgomery is a licensed and board registered nurse; however, it provides no evidence in support of this fact.  Rec. Doc. 30-1, p. 10.
[137] Rec. Doc. 46-1, ¶ 11.

is even referencing herself as someone passed over for this position or if she rerefences other women in general.

Plaintiff has failed to present summary judgment evidence to support a prima facie case of disparate pay under the EPA; therefore, Defendant is entitled to summary judgment on Plaintiff's Title VII failure to promote claim.

### E.   Equal Pay Act ("EPA")[138]

Plaintiff has asserted a claim for disparate pay under the EPA.  The EPA prohibits employers from discriminating "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."[139] To establish a prima facie case under the EPA, Plaintiff must show: "(1) that her employer is subject to the Act; (2) that she performed work in a position requiring equal skill, effort [,] and responsibility under similar working conditions; and (3) that she was paid less than members of the opposite sex."[140] Plaintiff need not show that her job duties were identical to those of higher paid male employees, only that the "skill, effort and responsibility" required in the performance of the compared jobs are "substantially equal."[141] If Plaintiff makes out a prima facie case, then the burden shifts to Defendant to demonstrate that the differential is justified under one of the EPA's four enumerated exceptions: (1) a seniority system; (2) a merit system;

---

[138] 29 U.S.C. §§206, *et seq.*
[139] 29 U.S.C. § 206(d)(1).
[140] *Jones v. Flagship Int'l*, 793 F.2d 714, 722-23 (5th Cir. 1986); *see also Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993).
[141] *Wallace v. Bd. of Sup'rs for the Univ. of Louisiana Sys.*, Civil Action No. 14-657, 2016 WL 7116107, (M.D. La. Dec. 6, 2016)(quoting *Jones*, 793 F.2d at 722-23 (citation omitted)).

(3) a system which measures earnings by quantity or quality of production; or (4) a differential based upon any factors other than sex.[142]

There is absolutely no evidence before the Court to establish any of the requirements of a prima facie case under the EPA.  In her opposition, Plaintiff essentially ignores these requirements, harkening back to her claims of harassment: "In spite of her qualifications and performance, she suffered adverse employment decisions. These actions were taken under circumstances that give rise to an inference of discrimination, especially considering similarly situated individuals outside her protected class were treated differently."[143]  Plaintiff inexplicably references "experiences narrated by several of its past and present employees" in support of her EPA claim;[144] however, Plaintiff has not presented a single statement from any witness other than herself.  Because there is no summary judgment evidence before the Court to support Plaintiff's EPA claim, Defendant is entitled to summary judgment on this claim.

### F.    Intentional/Negligent Infliction of Emotional Distress ("IIED/NIED")

Plaintiff also asserts claims of intentional and/or negligent infliction of emotional distress under Louisiana tort law.  To maintain an action for IIED in Louisiana, Plaintiff must establish that (1) Defendants' conduct was extreme and outrageous; (2) Plaintiff suffered severe emotional distress; and (3) Defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from its conduct.[145]  The conduct requirement for IIED is difficult to meet; the standard does not reach "mere insults, indignities, threats, annoyances, petty

---

[142] *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 723 (5th Cir. 2011); 29 U.S.C. § 206(d).
[143] Rec. Doc. 46, p. 7.
[144] *Id*.
[145] *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).

oppressions, or other trivialities;" rather, the behavior must "go beyond all possible bounds of decency, [and must] be regarded as atrocious and utterly intolerable in a civilized community."[146] "Unlike an action grounded in negligence, an action sounding in intentional tort causes us to focus on whether the employer desired or knew that the harm facing the plaintiff as a result of the complained-of conduct was substantially certain to result from the conduct."[147]

Louisiana law does not recognize the independent tort of negligent infliction of emotional distress.[148] Nonetheless, a plaintiff may recover for emotional distress inflicted by the defendant's negligence unaccompanied by physical injury where the defendant's negligent conduct is deemed to be outrageous.[149] In order to recover, a plaintiff must show the existence of the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious."[150] "The most common thread of the special circumstances ... is that each of those cases present facts proving that the defendant's act created a very strong and obvious likelihood that the plaintiff would suffer genuine and severe mental distress."[151] Unless an employer knows of the employee's particular susceptibility to emotional distress, the employer's conduct should be judged in the light of the effect such conduct would ordinarily have on a person of ordinary sensibilities.[152]

---

[146] *Id*.; *see also Iturralde v. Shaw Grp., Inc*., 512 Fed.Appx. 430, 435 (5th Cir.2013) ("Under Louisiana Civil Code Article 2315, plaintiffs must meet a high burden of proof to prevail on an IIED claim.").

[147] *Bourgeois v. Curry*, 921 So.2d 1001, 1010 (La.App. 4 Cir. 12/14/05).

[148] *See Doe v. Smith*, 913 So.2d 140, 142 (La. App. 4 Cir. 2005) (citing *Moresi v. State through Dept. of Wildlife and Fisheries*, 567 So.2d 1081, 1096 (La. 1990)).

[149] *Lester v. Secretary of Veterans Affairs*, 514 F.Supp.2d 866, 881 (W.D. La. 2007); *see also Boquet v. Belanger*, No. CIV.A. 14-2228, 2015 WL 1650255, at *6 (E.D. La. Apr. 14, 2015).

[150] *Lester*, 514 F.Supp.2d at 881.

[151] *Boquet*, 2015 WL 1650255 at *6.

[152] *Covington v. Howard*, 146 So.3d 933, 940 (La. App. 2 Cir. 8/13/14), *writ denied*, 160 So.3d 973 (La. 11/21/14).

Plaintiff has failed to demonstrate extreme and outrageous conduct for the same reasons set forth by the Court in analyzing her hostile work environment claims.  Focusing almost entirely on the purported severity of her emotional distress, Plaintiff ignores the requirement that she present evidence of Defendant's intent to bring about her emotional distress or its knowledge to a substantial certainty that its conduct would cause genuine and severe emotional distress due to the Plaintiff's particular susceptibility.  The Court cannot find in the allegations or the record any claim or evidence that Defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from its conduct. Even assuming an issue of material fact as to the other factors, summary judgment on Plaintiff's IIED and NIED claims is warranted based on this lack of evidence.

### G.    Vicarious Liability/Negligent Hiring, Training & Supervision

In her Complaint, Plaintiff alleges that Defendant is "vicariously liable" for the

acts and/or omissions of its employees who were within the course and scope of their employment and that said are liable unto Plaintiff due to its negligence attributed to but not limited to the following non-exclusive particulars: failure to keep due and proper lookout over their employee's activities, negligent hiring of employees, negligent supervision of employees, hiring reckless and careless individuals, negligent training of employees, and any and all acts of negligence which may be proven at trial in this matter.[153]

The Louisiana Supreme Court has recognized claims of negligent hiring, training, and supervision as stand-alone causes of action distinct from the theory of vicarious liability.[154]  However, Plaintiff does not mention a claim for negligent hiring, training, and supervision in her Opposition; rather she addresses her vicarious liability claim only in the

---

[153] Rec. Doc. 1, ¶ 39.
[154] *Roe v. Safety National Casualty Corp.*, No.   , 2020 WL 3477071, *4 (W.D. La. June 25, 2020)(citing *e.g., Harris v. Pizza Hut of La.*, 455 So.2d 1364 (La. 1984); Roberts v. Benoit, 605 So.2d 1032 (La. 1991).

context of "the discriminatory behaviors, derogatory remarks, and harassment" committed by employees of Defendant for which Defendant should be held liable.[155]   Accordingly, any claim for negligent hiring, training, and supervision is dismissed with prejudice as abandoned.  Further, because the only other state law torts alleged, IIED and NIED, have been dismissed, Plaintiff's vicarious liability claim also fails.

## IV.    CONCLUSION

For the foregoing reasons, the *Motion for Summary Judgment*[156] by Defendant, Eye Care Surgery Center, Inc. is GRANTED. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 22nd day of  December          , 2023.


_Shelly D. Dick_

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[155] Rec. Doc. 46, p. 11.
[156] Rec. Doc. 30.